Page number 19 of 6298. The Road New York et al. v. Chad F. Wolf, Acting Secretary of the Department of Homeland Security and the Department of Homeland Security et al. Appellate. Mr. Stewart for the appellate, Mr. Bala-Pesha for the appellate. Mr. Bala-Pesha. May it please the Court, I'm Scott Stewart on behalf of the United States. If I may, Judge Millett, I'd like to try to save three minutes for rebuttal. In this case, the District Court universally enjoined the Acting Secretary of Homeland Security's discretionary designation of certain unlawfully present aliens for expedited removal. The District Court did so for lack of notice of common procedures and on the grounds that the designation was arbitrary and capricious in violation of the APA. This Court should reverse the District Court's preliminary injunction. The District Court, most importantly, lacked jurisdiction over the case or to review the designation. The District Court erred in holding that the Acting Secretary was required to use notice of common procedures and the District Court also erred in holding that the designation was arbitrary and capricious. Let me, if I can, I just want to get a handle on one piece of your case. I appreciate that you focus on what I'm asking you and not what you think I might be asking you. I'll do my best, Judge Edwards. I understand all of your arguments with respect to the discretion in the hands of the government and review of the law. I understand all of what you're trying to say. What I'd like for you to explain to me is what kinds of cases do you imagine can be pursued under E? Do you know what I mean by E? Yes, Your Honor. There clearly are causes of action that can be pursued. I'd rather not go off into trial case law, which is reflected whether or not that was a third-party standing case. I don't want to be sidetracked there right now and then descending into E. I want to know, assuming in your view someone's property, what kinds of cases, because there are two kinds of actions, claim that are by constitutionality and claim that the regulation policy, written policy, written procedure, et cetera, violates disloyalty as a violation of the law. Tell me the kinds of actions you have in mind. Sure, Your Honor. An example would be, say that under the expedited removal statute, there's a right to consult. And if the agency adopts a procedure, a written procedure that says, here's how much time there is to consult, we're changing that from that. I'm sorry, I don't mean to interrupt your answer. I'm just not sure what you mean by right to consult for the individual, for the attorney, or for you. I'm sorry, can you just clarify, just so I can understand your answer? Sure, Your Honor. In Section 1225.B, several subdivisions down, I believe it's Section 1225.B.1.B. I'm sorry, go ahead and answer. I just didn't understand. You don't have a quick layperson explanation? B-1 what? B-1 Romnet 4, captions information about interviews. A little in the Romnet 4. And so, for example, the attorney general should provide information, and an alien may consult with a person or person of the alien's choosing. Say that the agency has guidance on how that's implemented, the procedures used to implement that consultation right or potentially that information right, and the agency issues a new written guidance that says, here's how we're going to implement it going forward. That would be an example of something that could potentially be, that could be challengeable with an appropriate plaintiff, Your Honor. Another example, this came up in a- While they're in the actual, first of all, once you're serving asylum, you're at least getting a little more process from the ordinary expedited removal process. So during, you're saying the individual who's in the asylum process can bring it or anybody can bring it? I think somebody who gets an expedited removal order and, say, this implementation, this procedure implementing the consultation right is not consistent with the statute, and somebody were to bring that claim, that could be an example. Any others? I believe another example that has arisen is, say there's a regulation, a written regulation that implements as a bar to asylum eligibility that operates in the credible fear process. So somebody is in the credible fear process and says, and is barred from pursuing, from making, succeeding on a credible fear claim because of a new asylum eligibility bar, that could be the kind of thing that, with an appropriate plaintiff, could be challengeable, Your Honor. So those are two examples. I do want to be, I'm trying to be careful and precise, Judge Edwards, because one of our points is, as you know from our briefing and the points we've made, is that from the AILA case, from this statute, it's very important under this provision to Congress that the right kind of plaintiff be before the court, somebody who actually had these removal procedures applied to them, somebody who has an order. The AILA decision- So can I just ask, why did the government not press the standing claims on appeal? I think, Your Honor- Because they're concerned about the right kind of plaintiff. Because I think this is, and we did raise a number of issues on appeal, Your Honor. We, you know- Yeah, there are a lot. As you know, there are more than, than you might, but the sub-issue is more than perhaps the average appeal. So we did do some narrowing. Let me ask you, I mean, we, of course, have an obligation to ensure that we have standing, whether you press it or not. And so I have a question about redressability. So assume that the plaintiff has been injured, that their injury is imminent. Even if we assume that, I mean, if the statute here prevents us from giving injunctive relief, isn't there a problem with redressability standing for these plaintiffs who haven't actually been subject to the expedited removal procedures? And can we actually give them the relief that they are seeking? And if we can't, then don't they lack standing? I think that is one problem with the member plaintiffs here, Your Honor. I mean, I think it's a number. You have a redressability problem because, in part, because there's no injury yet. You don't have a plaintiff- Well, I'm just saying, even if we assume the injury is imminent, I mean, I don't think we would assume that based under Article 3, but I'm just asking you to address the redressability point. I do think – I think I agree with you, Judge Rowland. I can't see, given the nature of the statute, what it really – the limited relief that's available is a determination as to a particular alien, and given that limited relief, it really makes sense and provides a redressable situation only in the context of an individual who's affected. So I don't- It depends on how you frame the cause of action. If you take it their way, that the injury, under ease of their challenging, is a failure to use. They're saying otherwise in violation of the law. In their view, it is a failure to use under some kind of rulemaking. You can certainly have representational standing with a group. It's like reinforcement standing. It's just old news. So the argument – the AOI case doesn't take account of Lexmark and what Lexmark added to the landscape of elimination of all these credentials, standing, and statutory standing. It really changed it. And so it's there, and I understand it, but it certainly couldn't initiate the notion of representational standing, assuming that you meet the usual rules. You're a member, and the members line up with the group, and there's no need for the member to pursue. On their theory, their theory is the violation of E is a failure. And that's all I understand, and they can say whatever they want when they get up here. That's all they're claiming is there's a violation of the APA's requirement of notice-income rulemaking. And so standing is easily satisfied if that's your theory. Some of these other things that you have in mind, there would be a question. Well, here's what – I take your point about certainly the change in certain terminology in the standing context in the AILA case, Your Honor. But what I would emphasize is that the court's decision in that case really turned on an interpretation of this statute. And what the opinion said around 1359, 1360, it basically said, look, this is going after something more than sort of their organizational arm. What Congress wanted here was not just an organization claiming E is on behalf of members. In your case and all the other cases that you have and are trying to rely on, I don't know why you'd be pursuing this claim and relying on a case that was clearly focused on third-party standing, which even lacks more understanding. If that's all you have is third-party standing, the plaintiff is relying on the rights of others, and that's it. There's no doubt you can't pursue that. That's not this case. This case is about a membership group with members, and they're pressing a claim that affects all the members. That – our prior case does not change that and could not change that. I respectfully disagree with that, Your Honor. I hear you, but I don't know how you could possibly change it. Sure, Your Honor. Hopefully – can I hit a few points in the statute, and hopefully I can bring the point across? What the court's decision there was it looked at the context of the statute and says, look, this statute bars Rule 23 class actions. It bars sweeping and classified injunctive relief. It's really focused on application to a particular alien, and we have to reject, given what this statute signals, the proposition that Congress allowed organizations to bring suits on behalf of potentially aliens anywhere in the world. That's at 1359, and what the court honed in on there was it looked at, under an organizational standing approach or an organizational plaintiff approach in this context, you have a situation where the particular situation of a plaintiff doesn't matter. There's no confining influence of a plaintiff who's actually affected. So the court was saying, look, Congress, in this very carefully drawn limiting statute, really required more than just the ordinary organizational or Article III standing. Exactly. It's an overreach, unnecessary, third-party standing case, and you're under a section that says challenges on the validity of the system. It doesn't limit it to individuals. It's challenges to the system where they can come in, apart from all of the other places where they can't come in, where the actions are not reviewed. There are a couple of places where they can come in, and whether it's an individual who comes in, with all the claims that you mentioned, or consultation rights, or a group of individuals who are all affected by a denial of consultation rights. I would invite for a second that if there are 20 aliens who are not being denied consultation, that they can't come in with an organization that they belong to and challenge under E. I thought your argument was that's not this case. They're arguing APA rights, and your argument was they can't raise the notice in common. Right. I don't know why you're arguing this, making this other point, and trying to make that first case much more than it can possibly be, because it cannot possibly eliminate the possibility of representational standing, or eliminates it. You have a rule on consultation with respect to asylum, and it affects known aliens, and they're the ones who are coming in with the association. They surely can come in under E. With respect, Your Honor, I think Congress did map out in the statute that it wanted more than the organizational standing requirement. It could be a case, look, somebody could satisfy, say, a Hayden's Realty organization type injury, something else, but Congress wanted more than that. There is the heading that says challenge the ability of the system. E. itself is captioned judicial review of orders under Section 1225. I don't want to overstate the use of headings, Your Honor, but it would get to the approach, and this is something emphasized at page 1359 of AILA, where the court said, look, Congress envisioned that suits would be brought by and only by aliens who were aggrieved by the statute's implementation within the statutory time period. It's important language in doing that, but we're talking not about organizational standing, but associational standing here, and association is just a mechanism by which individuals come in. And the general understanding of aggrieved is that you don't have to wait until you're actually arrested to bring something if your rights have been changed. The ordinary understanding of aggrieved doesn't require, if the government has said, right, processes and procedures you thought you had are gone. You're now subject to this new regime. By the way, it's super fast. The ordinary course would satisfy Article III standing principles and would fit, I think, AILA's focus on whether it's someone who is aggrieved, subject to this regulation, is the one that brings the suit. There's a lot of other people, I guess, in these associations, but if you have an association of ten people in Nebraska who are now subject to expedited removal, but they want to go through the association because they prefer not to list their own names and addresses for obvious reasons, that would surely fit both your reading and AILA, wouldn't it, because it's associational and just happens to be reproved together? I don't think so, Your Honor. I think it wouldn't bar the individual members if they were, again, if they had a determination to bring a statute, but I think it really... But they do have, sorry, by determination you mean they're already arrested them? An expedited removal order would be a determination. Well, how does that, I think part of my confusion here might be, maybe it would help if you could just explain a little bit about how this works on the ground. I get you having it implemented, but surely the agency has an understanding. So you're now going to apply this expedited removal to individuals who are, I'm assuming Nebraska's 100 miles from the border on my geography, but pick wherever it is. Somebody who's in the middle of the country. Somebody, say, in the 14 to two-year window. So I'll give you under two years for now for this hypothetical. It's actually not a hypothetical. I just want to understand how it works. The government gets information that so-and-so is working somewhere, and they did not come here lawfully, and they've only been here eight months. Do you issue an order in the mail, or would agents go and show up at this site and assume that they've got a sufficient description? I assume they'd be able to just detain them on the spot. I believe it would be, and I'm not certain of all this, because we didn't quite delve into a particular plaintiff who experienced it. So you're already doing this, is it 14 miles? Yeah, 14 days, 100 air miles. 14 days, okay. So you're already doing it there. So how's it working there? I assume you're not mailing an expedited order of removal to folks and then waiting for them to turn themselves in, but you're, in fact, arresting people, asking them for this evidence, and then if they don't meet the immigration officer's standards, they're removed. Is that wrong? I think that's about right after the appropriate procedures are on. There aren't a whole lot of procedures. Let's assume they're not asserting credible fear because that gets you into another process. So they're not asserting credible fear. Right, Your Honor. I mean, most of the affected individuals don't have suits, aside from the limited habeas relief, because there's no – Do they even have time to – because the thing about E3 is it's a little unusual. To fit this regime of expedited removal, which I think the whole point of it is that we're not mailing you something, and then three months later you come into the office, and we find somebody, we detain them, we require the show, and if they don't meet it, we get to move them right on out. But you're supposed to institute an action in the district court for the District of Columbia. And I'm not sure feasibly how that could happen once somebody is already in this proceeding. Has that ever happened even before this expansion? Has anyone who's actually been detained, grabbed off the street, and didn't get to credible fear stage? Has anyone ever been able to institute an action? There have been a few recent lawsuits under E3. There really was – I don't think there was really much for quite a while after AILA, Your Honor. In the last couple of years, there have been a few more. By an individual who has just been grabbed up, interviewed by the immigration officer, and put on the bus? Maybe I'm misunderstanding the process. I think somebody who's – I guess I'll put it this way, Your Honor. It's hard for me to know sitting here where they were apprehended. I think a number of them were just recently crossed the border and were apprehended fairly promptly thereafter. And they had time before being removed to institute an action in this court? I believe a number of them in some recent D.C. district court cases were able to file suit, Your Honor. I think a lot of them may have gone to the credible fear process and that sort of thing. A little bit longer, maybe not a whole lot longer. But that's, I guess, to a week after seven days? I think that is – I'm not talking about those individuals. Imagine – so the reason I'm asking this is there's clearly a – Congress wanted to make sure there was – you have enormous discretion. Secretary, right? Secretary, you have enormous discretion under this statute. The discretion is bounded by what we give you under this statute. Of course, it's bounded by the Constitution because Congress can't give you rein to run outside the Constitution. And you're bounded by what the statute's limits are to the extent there are any. And other limits of law. That's what E3 is trying to get at. I think we agree on that? That you can't violate other laws. There may not be that many, but you can't violate the Constitution. Someone can challenge an action of the Secretary implementing this expedited removal system on the grounds that it's unconstitutional. I think so, Your Honor. I do want to just emphasize that I think we would argue that there are a lot of limits on that, but – Where, but in this section? On constitutional claims? Well, I'm referring, for example, to the time limit bar, Your Honor. Oh, yeah, no, I'm complying with everything. Sure, yeah. I mean, there are people like that and stuff that have done that. I just want to be careful about it going back. Yeah, I'm not assuming that there's no statutory limitation period on their constitutional claims. Let us create 3A, Rule 2 of the law. Say anything that limits it to individual claims. I mean, you're reading stuff into that section. It's a very limited offer, potential claims. It certainly doesn't limit it to individual claims. I understand what you're trying to do in relying on the precedent. I think it's dealt with in an entirely different situation. And it says regulation, written policy directive, policy guidelines, written procedure, and you've already said, for example, changing consultation rights. That clearly can contemplate the possibility of a lawsuit that involves representational standing, where there are several people who are directly affected by this new regulation, written policy, written policy guideline, or written procedure. And they could show the normal rules of representational standing. We are affected, and we want to challenge that. There's nothing in the prior cases, and there's nothing in our standing rules, and there's nothing in the statutory provision that says, no, you can't sue, because only one of you can come in at a time, and only when a certain kind of determination has been made with respect to you. That's not what it says. With respect, Your Honor, two points. I think, first of all, the statute does refer to determinations and implementations. It doesn't say or implementations. And I think a contextual reading is very critical here because it does, again, the bar on class action, the bar on classified injunctive relief, are really getting to the point that Congress wanted individual affected aliens to be the ones bringing suit. I'm not disputing the normal operation of the lawsuit. Can you focus on that language? I mean, you were just paraphrasing, but if you look at E3A, it says judicial review of determination under Section 1225B of this title and its implementation, right? So if your argument is that you need both a determination in order to challenge the implementation, but what about the fact that determinations is in the plural and implementations is in the singular? Do you think that's a scrivener's error by Congress? Because it's a singular, right? It suggests perhaps the antecedent is Section 1225. I think it would be a little – I don't think – How do you read those pronouns, I guess, to be consistent? Sure, Your Honor. I think it would be a little weird to use the word implementations. It's not as natural as determinations. I think what implementation is saying is that somebody with a determination can, in the way specified in this provision, also get judicial review of the implementation of one of these written policy guidelines or directives. So I think it's basically you get review of the implementation in the context of your own case, and there's also relief available to your particular determination. And what else in the statute supports that reading? That it refers to both? That you need both. I think – That it's conjunctive instead of disjunctive. I think it's a few – I mean, I've noted I don't want to overstate the heading, but the heading in E does refer to orders. There are the other provisions in E1A, barring conjunctive relief overall, and that there's something specified, E1B, no class actions, 1252F1, no class-wide injunctive relief. And there are all these very strong signals. What about 1252A2A4, which seems to be the exact parallel to 3A, where I wish they would do these things better. 3A, Roman at 2. And that it's effectively provided in Section E. So this channels everything that's got Section E. Procedures and policies adopted by the Attorney General or Secretary to implement this section, the provisions of this section. Implementation there really seems to be not orders, but procedures and policies adopted. And I assume that parallels the implement there, that there's really – and this actually is, I think, traditionally when Congress uses implement in this way, right next to a statutory section, it's about when that is being – when they've adopted something. You're challenging the procedure or policy itself. And so implement here, doesn't that parallel what's going on there? That's why it was singular, it.  Your Honor, I mean, I think what A2A overall is signaling is that there's really very limited review of expedited relief, except as explicitly pointed out, as to Roman at 4 in particular, one, I think, important distinction between what that provision mentions and what E3 mentions, Your Honor, is Roman at 4 refers to just procedures and policies unmodified. E3 emphasizes that what we're talking about is a written policy directive, written policy guideline, written procedure. So as shown in the District Court piece there, I think noted that it's not for a kind of like non-announced, non-written policy procedure. I guess there's a difference between the categories. I hear you saying that. I'm just focusing on implement. And it's a little odd to think of you can institute a cause of action in the District of Columbia and you can challenge both the determination and under 1225 and its implementation. And also everywhere we talk about implementation, it's used in these terms. I mean, two, Roman at 2 gives us a sense of what we're talking about when we mean implementation of 1225, doesn't it? When it talks about not the order of removal, but written policies, written directives, all the language that's there, it seems to me that the understanding of its implementation of Section 1225 is actually reinforced very much by what we're talking about is how it's implemented. I think what I'd again come back to, Your Honor, is I do think AILA properly addressed this when the court said, when the court emphasized, look, implementation involves application to an effected person. That's what this statute is aimed at. It's actually aliens who actually have the procedures applied to them. That exerts a limiting, confining influence on the lawsuit. The difficulty with that, too, is that your reliance on AILA is you seem not to be relying on when AILA says that the 60-day clock starts running from publication, not from determination or application to an individual. So that kind of AILA where you don't want us to follow? I don't know from AILA, Your Honor, that the court was really presented with the score of what is first implementation. Well, it wasn't presented with associational standing either, but that doesn't seem to be your reliance. I think it was, Your Honor. Do you think that was error in AILA to say that the clock started running on when it was published, but I don't mean necessarily formally promulgated by the government in whatever form they released it? I'm not sure on that, Your Honor. I think it just wasn't. Either you agree with it or you don't. Did the government argue that that was what started the clock there in AILA? I'm not sure, Your Honor. Again, I think it was a new system. I don't know. The court did have some individual plaintiffs who timely filed there under that definition. I mean, that's a problem. The court there adopted the definition of timeliness applied by the district court, which means that we adopted some other aspects of the district court decision without further elaboration. That's our own opinion, which included this timeliness, which makes it quite a whole thing in my view. But I think, Your Honor, I mean, I think this gets to one of Your Honor's earlier points. I believe that the two plaintiffs whose claims made it up to the court, I believe that they were both removed. So I think it was pretty fair to say that they had the procedures applied to them. My only point is there were whole issues of timeliness, which makes it a little bit hard to brush this into victa, because timeliness very much cannot be determined without knowing when the clock starts running. And the notion there was that the clock started running when the rule came out, which would mean that we would then have to have a theory of this statutory provision that would allow the government. It would never allow challenges as long as they don't take individualized actions for 60 days after they announce it. Again, I'm not sure. I don't think we have that situation here, Your Honor. You may not, Your Honor. I'm asking you about your reliance on AI. Well, I think – How the statutory schemes went to work. Again, it's hard to – I'm not exactly sure how it came out, Your Honor. But imagine this case where – Don't we need to know – I'm sorry. Don't we need to know that? As I read AILA, Your Honor, it seems to me to be saying that people had the statute implemented. There were individuals who brought suit who had the statute implemented against them within 60 days of the effective date of whatever the actions were. So it seems that whether you count implementation from that day or from somewhere a little later within the following 60 days, I'm just not sure that the issue would have been presented, Your Honor. So you think that was wrong then when they said it starts running. This is, again, the ordinary rule of implementation, which would not be of a rule or directive. I would think the time ordinarily starts when it's put out there and people's rights are altered, even if they haven't yet individually prosecuted somebody. Can we move on? This is in your own theory, I assume. Do you – does your case rise and fall on whether or not we buy your theory about AILA and that third-party standards? I thought you were relying heavily on – I'm utterly perplexed by this argument. 1252, A2A, and B, and your claim that otherwise in violation of the law does not include the failure to use notice and comment rulemaking in this context. And we've spent all this time on E, but I thought those were your principal arguments, but I don't want to re-characterize your case. I think that's the next group of arguments, Your Honor, after the E3 no-jurisdiction argument. It is fair. We have a number of arguments on that point. Well, the A2A is a no-jurisdiction argument too, no? Were you making a no-jurisdiction argument then? We are making a no-jurisdiction argument, Your Honor, but we started with the there's no jurisdiction. Yeah, I'd like to move away from that. Okay, Your Honor. We've killed it. I'd like to hear what your arguments are on these other two points. Your opposition, which I'll ask, doesn't even refer, at least in the summary of the argument, A2A. You've got a lot of ways that this is allegedly not reviewable in A2B. And then your claim in some cases on the back of it that there's no requirement, legal requirement, to use notice and comment rulemaking in a case like this. Sure, Your Honor. I'll try to hit those points as concisely as I can. So, our next jurisdictional argument is under Section 1252A2B2. And that's the provision that authorizes the Secretary to designate folks within a two-year in-the-country group for expedited removal. The key point is the textual point that you give the Secretary the authority to make that designation in the Secretary's sole and unreviewable discretion, and that designation may be modified at any time. And our point here, Your Honor, our fundamental point, and this is something emphasized in a number of the cases we've cited and I think you alluded to, is that it's a mistake to look at this provision as protecting only the bare ultimate designation itself, just the number that the agency head comes to. As Borden recognizes out of the Eleventh Circuit, if a court can dictate which arguments the court needs to entertain, how the court weighs the evidence, how the court goes about reaching the designation, basically the process, then there's a risk that it creates a situation where the designation, the decision, is not in the agency head's discretion, but it's subject to really extensive review and really eliminates the ability, the conferral of sole and unreviewable discretion. That's the key point, Your Honor, on 1252A2B. How does A and B work together? I mean, they both are presenting problems for the plaintiff because the terms are so strong. How are they going to get the memo? A meaning the review relating to Section 1225B1. And then B, the miles of discretionary order. Sure, Your Honor. What is B adding to A? Because A takes big bites out of everything. Right, it does. I think A is really focused on expedited removal in particular, Your Honor. It's really saying, look, there's almost no review of expedited removal orders, period, except for terms of agency E3, essentially. So it's focused on expedited removal. B is really focused on protecting the attorney general or secretary's discretion across a realm of areas, Your Honor. There are a good variety of immigration relief decisions, things that the agency heads can demand of folks, that's left to the secretary or attorney general's judgment, discretion, and that's what B is protecting, is those matters of judgment and discretion. So there's some overlap at times, as there is in this case, but the focus is a little bit different. The first one is expedited removal. The change in the policy would be under B, is what you're saying? I think the designation and the process for making that designation is captured under B. And, again, that makes sense for the reasons I've said before, Your Honor, about how the term sole and unreviewable discretion and a designation that can be modified at any time really hits home that this is something that Congress really sought to protect from review outside of the political branches. It does arise in the immigration enforcement context, so it is one of those areas where the executive has significant leeway and judgment and discretion. So that all makes sense there. And I know that I'm a ways past my time, Your Honor, to address some of the more specific notice and comment points that I think you were also highlighting, Judge Edwards, is this sole and unreviewable discretion, and may it not be modified at any time, that language together in this context really shows that the APA's notice and comment requirements are displaced. I mean, the thrust and the point of those plain terms. Now, you're talking about 1225. Yes, Your Honor. Yes, the 1225E1. Can I ask you a practical question? I mean, is the Secretary in this context of designating certain categories of people for expedited removal, is the Secretary required to post something in the Federal Register, or can they exercise that discretion without any type of written notice? I mean, could the Secretary make this decision without having published a notice in the Federal Register or elsewhere? We haven't really made it. I'm not aware of making it plain one way or another. That is required under either the statute or the 1997 regulations. Right. As I'm standing here, I can't think of something in the statute or regulations that requires it, Your Honor. I don't want to overspeak if I'm wrong. I believe that at some point in the regulations that the Attorney General, I believe, may have established a mechanism for how these would be done, and I think that's now done by notice, so it's possible to have that. Going back to the original statute itself, whether it requires publication, I don't know that we've taken a position on that. But, Your Honor, a more important point is whether you post it in the Code of Federal Regulation, because that would be a kind of concession that it's a rule, and then the requirement of notice and comment should click in under normal APA rule. What is interesting here is you have never, through, as far as I can tell, Clinton, Bush, Obama administrations, through a lot of administrations, you have consistently said notice and comment is not required. You have never posted in the Code of Federal Regulation, and in every one of those administrations, we've gone back and looked at them all, notice in the Federal Register, but that does not make something a rule because it's posted in the Federal Register. That's why I was reflecting on raising that argument. The government has a very consistent 20-year history of, from the beginning, after the very first regulation, you have consistently said these are not regulations, and you have never posted them in the Code of Federal Regulation.  I think it's right that we've done it by notice and by saying, look, this is a perspective. It fits in a little bit to the general statement of policy point that we're making, Your Honor, that, look, we're advising the public on how we're going to exercise this discretion that Congress gave us. This is line officers retain their discretion to put somebody not in expedited removal proceedings at all. They can go into full removal proceedings. It's not a binding rule subject to notice and comment. The only curiosity here is if you take the normal picture of what goes on in there in law, there are lots of places where agencies can have notices of policies or whatever they are that are not subject to notice and comment rulemaking and cannot be challenged because they're not rules and we can't make them rules. But when they are then later enforced, they're subject to review upon enforcement. And I think your argument here, if I'm understanding you correctly, say whatever someone can get out of these, they don't have that possibility. So your argument is they don't have to post it. We don't have to post this. It's not a rule. We've never said it's a rule, and we don't have to make it a rule, like Judge Carlton said in the 11th Circuit. And when we implement this thing, it can't be challenged. Is that your argument? I think it's the designation, Your Honor, is I think it's not. That's what sole and interviewable discussion means. It's not subject to review. It could be different for the suits authorized in E3. No, no, I understand the couple of categories. Right, yeah, I'm just drawing that distinction, Your Honor. But I think the designation is different. No, let's just get it. You've expanded the net, so now it includes X number more potential evidence. That's what this fight is about. The way the government has been playing that out is we can do that any time we want, like the Obama administration added a Cuban group, as I remember correctly. Before that, additional groups were added. The group was added. Never done by rule, and we can't find any cases suggesting that the failure of the Union's notice and comment rulemaking was a legal failure. So all I'm asking, now to make sure I understand this case, is when a person who's now in that expanded group gets removed, he or she has no lawsuit, no claim. They certainly can't go back and say, wait, you made a mistake in expanding the group. They can't challenge that, right? And so do they have any claim to pick and race, other than the little category that you're willing to concede and eat? I think it really is limited to E, Your Honor. But to be crystal clear, as I read your brief and tell me if I'm wrong, the only individuals who can even bring back claim, let's say they've got a claim that what you did was unconstitutional. You expanded within the statutory limits, but you said the sexual expansion only applies to non-white people. And someone says, I think that's unconstitutional. But as I read your brief, unless they happen to be so fortuitous as to have this rule applied to them within the first 60 days it's first applied to somebody, they can't even bring a constitutional challenge? Don't make the argument as if you have a clear choice. No, I debate it. No, no. You're right to ask it, but that's just E, Limitation of Loyalty, prior case, and it's a bizarre argument. It's not just the prior case. I think, Your Honor, it is a hard issue, and I take the point. No, that's your argument. I think that unless somebody meets the criteria of E3, they cannot bring a suit. And that applies to— And that's your 60 days. So it doesn't run from when you first adopt the rule, as AILA held. And it doesn't rule from 60 days when you apply the rule to me. It only applies—if I understand it, please tell me if I'm wrong. Your theory is that the clock starts running when you first apply it to the first subject individual. And if I'm not—if the government doesn't apply it to me until day 61, 2 and 3, I cannot bring that constitutional challenge. Is that right? I think that's right, Your Honor. Isn't that unconstitutional reading of the statute? Your Honor, I think—I would not concede that it is, but I would say that I assume that if that were ever to happen, the issue would be litigated. I don't think the court needs to reach that here, given that we don't have that. No, that's your reading. I mean, I don't know how we cannot adopt your reading of the statute. Yours is that it's implementation, and, you know, there's points in AILA that you can refer to here. But that is—it's a little hard for me to know how to interpret this if I can't take or leave your reading of it. I take your—the same position would be if the secretary said, we're applying this, and you better show that you have been here two years and one day. I take it the statute is up to two days. If you're at two years, you're—they say two years—or two years. We think it's ambiguous. We think the statute says unless you've been here two years and one day. So if you've been here two years, we still get to remove you. So decide about whether it's up to two years or on the two-years date. So there's this important statutory question. And, again, no one can bring that unless you apply it to them within the first two days. There may be another provision under E that would present an issue there, Your Honor. Again, it's— Another provision under E that would allow them to sue? Maybe a constitutional challenge? Your Honor, it's hard—this is a hard statute to describe in the abstract. What I tried to emphasize is— I don't think that's abstract. Look, I mean, this, again, calls for a situation where we haven't had a— AILA did reject a situation where it was basically like, oh, hypotheticals, if people couldn't bring suit and that kind of a thing. They said, look, we have people who are able to sue timely here. We don't think that that's a problem. And I think it's something that a court should address, if at all, when that issue is squarely presented. But the concern is that it just can't get presented for people who are subject to expedited removal because it goes so fast. So they'd like to bring it now. And they needless to say don't want to reveal their names and addresses. And you're saying they can't. I still don't—I'm not sure that that bars them from bringing suit, Your Honor. I mean, that could be a separate issue. I'm not sure how that would— It's not going to be a statutory bar. I'm just talking about reality. Congress had a reality here for expedited removal that was very fast. They called it expedited removal for a reason. They had a concern they were addressing, and that's what the political branches get to decide to do in our system. Right. Just enough for them to sit with the reading we're getting here. Right. What I emphasize, Your Honor, is that this does, I think, emphasize the point that that sort of issue should be considered at the time when there are actual plaintiffs. An expedited removal is something that— There are actual plaintiffs here. I mean— It's been disputed that these are actual plaintiffs. I'm sorry. Individual plaintiffs, Your Honor, is what we— It's all turned over. Right. Okay. Thank you, Your Honor. Thank you. It's kept you a very long time. We appreciate your patience. Thank you, Your Honor. Bala Krishnan. Do I say that correctly? That's right. Bala Krishnan. That's correct, Your Honor. Good morning. May it please the Court. I'm Bala Krishnan for the Attali's. I want to roughly track the sequence that the Court proceeded with appellants on the arguments, touch very, very briefly, hopefully, on a couple of the questions that I'm going to let you ask about the E-3 issue, and then move on to the question of the other statutory issues involved, which were A-2, B-2, which purportedly strips judicial review over the notice of common claim and the merits of the notice of common claim. But, of course, if there are questions, I will answer them. So just to begin, Judge Mott, you had asked whether there were any cases where individuals had filed E-3 cases before they were deported. The only ones we're aware of and that we've been involved in very recently are ones where the plaintiffs were put through. Do you want to read that last one? Oh, I'm sorry. Excuse us. Don't hide it, guys. Speak up. Yes, so the only cases that we're aware of are ones where people have, in fact, gone through the credible peer process and been denied. And, of course, that's a longer process where you're detained, and you also have a period of time to consult with counsel. In those cases, they're oftentimes detained in facilities which have legal programs pro bono that are serving the population, so they oftentimes will touch or communicate with the lawyer at that time and, therefore, be able to potentially bring an E-3 student D.C. So I guess they're hypothetical that if they didn't allow the consultation, you could sue. It doesn't really work so well then. You can't talk to a lawyer to bring the suit. Of course. Because there was a lack of consultation. Of course. If there was a situation where you were denied your consultation right during the credible peer process because that's where the consultation right applies, you wouldn't have a claim then. It may be harder to bring a lawsuit. But I think the problem here, of course, with the expansion is you're not talking about people who are necessarily going to go through the credible peer process. You're talking about people who will be just simply walking down the street, and this has happened that it's in the declarations that we've submitted to the district court and earned the record, where someone will be picked up, say, by a state or local police officer. They will then report them to immigration. They will then be issued an expedited removal order. They will not claim a credible peer, and they will be removed within days and potentially even hours if they may be from Mexico, and it would be easier to deport them. And that's the reality of the way that the expedited removal order works. I don't know how this works in practice. So local police pick them up from whatever, their phone call to, let's say INS, I don't know which office they're calling, ICE or something like that, and they come and I guess an officer comes or they take the person, and there's someone there that does the people who come who actually do the immigration officer? I mean, it can be done by either an officer of the Immigration and Customs Enforcement or Customs and Border Patrol, so two different sub-agencies within the Department of Homeland Security. Well, I'm assuming for the middle of the country it's not going to be Border Patrol, right? Well, Border Patrol is, yes, it's possible. I mean, though, even within the 14 days, 100 miles. That doesn't matter so much. So the ICE or ICE officers come and they bring with them an officer, or does each ICE officer count as an immigration officer for purposes of the statute? Well, for the purposes of the statute, yes. It's an individual line ICE officer is authorized to issue an order, an expedited order of removal on the spot. So they would simply determine whether continuous presence had been met, alienage had been met, and the other two sort of statutory requirements, whether they entered without inspection or not, and then they would issue them an order of removal. And at that point, that order of removal is final but for a paper review by a supervisor, which doesn't involve, of course, it's not contested in any way. It's not a live hearing. It's just a supervising officer can just look at it and check off and say, yes, this looks fine. And that's the entirety of the process. I mean, within what we've seen, which, of course, has been only at this point limited to the border, because I think it's important to understand that even though that extends to 100 miles, predominantly it's used very close to the border. And it can take, I mean, it's minutes. The CBP officer will just intercept someone as they see them crossing the border or see them near it and deliver the paper right there. So it's very speedy. Can I just add a follow-up on that? Go ahead. The concern I have is it's very limiting the focus for me because you're trying to proceed on the E, and as I understand it, you are principally arguing that the failure to use noise-incoming rulemaking is otherwise in violation of law. I don't want you to have anything. Assuming that they're wrong on their standing creation. Otherwise in violation of law. And there are cases that compellingly say when an agency has this much non-reviewable discretion, it makes no sense to think there's a notice of comment requirement from the APA. Under Section 701 and 2 of the APA, I don't know how you have a cause of action with respect to a non-reviewable matter to say, but you have to have notice and comment. And in addition, you have this long history through several administrations making it clear to the public, we are not going to use notice and comment rulemaking. So there's a set of cases where had they called it a rule, you're in the swing. They don't. They've never called it a rule. They've just put it in the federal registry. That's it. They've always made it clear it's not a rule. If it's not a rule, you presumably do not have to use notice and comment rulemaking. So I don't know how you can rise this horse. That's my biggest problem on your side. I just don't understand it. I understand, Your Honor. I'd like to take those in reverse order because I think the answer to the second is a bit quicker, which is I don't think that the fact that the government has previously bypassed notice and comment is dispositive of that question at all. There have been no lawsuits under E3 since the initial AILA lawsuit in 1997. And, in fact, when they first implemented the 1996 Act, they did go through notice and comment. Yes. The basis rule. Yeah, of course. And then since then there have been two expansions, you know, to the 14 days and for people arriving by seat. Those were never challenged in court. And so the lack of any cases is something that these governments need. Well, those have been subject to litigation, but that was not the question. Well, the only way that I can think of. I agree. That's not necessarily dispositive. Okay. It's not in history, but it's not dispositive. I understand. So then moving to the first part of your question, I think that I just want to be very clear that there's two different questions on the table here, which is the first is a threshold jurisdictional question as to whether there's judicial review to hear our notice and comment claim. And the second question is whether the notice and comment procedures apply. The cases that the government cites in their brief, and I believe that Your Honor is referring to, are cases that deal specifically with that first question, and they do so within the context of the judicial provision that you mentioned in your policy previously, which is 1252A2B2, right? And so that section is basically it's targeted, it strips judicial review over challenges to denials of discretionary relief. That's what it does. That's what its title says. And as the district court correctly recognized, that section does not apply to our challenge here because we are not challenging a denial of discretionary relief. And the reading that we're offering on 1252A2B2 is directly compelled by the Supreme Court's holding in Cucano v. Holder, where the Supreme Court's holding in Cucano v. Holder, because there the Supreme Court specifically read that statute to apply to denials of discretionary relief and read the catch-all exception upon which the government relies as having to be read as a like kind as the other parts of the statute. So I think it's abundantly clear that that as a threshold matter, 1252A2B2, does not apply to our notice and comment challenge. That's just a jurisdictional item. That's a jurisdictional provision. But that is also the provision that's involved in each of the cases that the government is citing in their brief. Because there the question is, and all of it- Put aside jurisdiction, just to get to the merits. Of course. The issue of this fill-in discretion at any time sounds awfully committed to agency discretion by law. And can be changed. Well, I think that- At any time. Right, they can be modified at any time. Yes, no, I understand. So there I think there's a separate set of case law. I think there is a question, there's a background question. I think Lincoln v. Vigil in the Supreme Court considers a challenge to a new policy. And it considers first whether it's committed to agency discretion by law, and therefore there is no judicial review over an arbitrating capricious claim. And then separately, and it specifically states as an entirely separate matter, it determines whether the agency should have nonetheless gone through notice and comment rulemaking. Because notice and comment- What is your vision of notice and comment rulemaking? Because normally the point is, we don't just say, put the notice out there and get comments. We then require the agency to sort of wrestle and reason with the comments. Is your theory that, no, they don't have to do that because it's still an unreviewable discretion. But they have to put the notice out there and get the comments in, and then they can ignore them? No, I mean- No, in fact, they did that here. I mean, the agency put this out, notice out, said it was effective, but also sought comments. It did go- Right. That's correct. But here's the thing- I took your position to be, oh, no, you didn't wrestle with the comments. Yeah, there was no case- Some cases- The question was pre-accommodation. Notice and comment wasn't followed under 553. But 553 requires as a mandatory matter that the agency accept, like, issue notice, accept comments, and then issue a concise statement of its reasons thereafter. And that's entirely- the reasons for that are entirely separate from sort of insured and judicial review over the substantive rule that is developed. In fact- I don't see how you're disconnecting the substantive rule. I mean, the way you're arguing in your brief, and even as you're saying it now, you're sliding into the substantive result. You're saying that a judgment can be- I don't know how you get past 7172 in the APA. I don't know how you can call- even have a cause of action to get the jurisdiction, how you can have a cause of action under the APA, including a claim that you fail to use notice and comment rulemaking when it says that the designation should be in the sole and unreviewable discretion of the attorney general, and may be modified at any time. I don't know how that works with notice and comment, other than you have to do it, and then we're done. But there's reasons to do it. I mean, this Court and the Supreme Court have made clear that the purposes of notice and comment from the very origins of the APA are not solely about providing for judicial review. It's to ensure public participation in the rulemaking process, and also- That's what Judge Collison and others have said. That makes no sense with this statute that says we're not looking for- Well, I mean, maybe another way of focusing on it is what is the meaningful standards that are here? I mean, if there's something in the sole and unreviewable discretion of the Secretary, what are the meaningful standards? Here the District Court kind of imported, you know, suggested the INA doesn't provide standards, and then said, well, the APA itself provides standards. I mean, is there any other case that has held in a similar way, using the APA as the meaningful standards for review under a different statute? I mean, I think there's two different questions there, and I just want to try to be clear. So the first is whether- I mean, the applicability of notice and comment does not turn on whether there's any meaningful standards. Otherwise, the Supreme Court in Lincoln wouldn't have gone on to the second part of its holding or reasoning at all. So I think those are two separate questions. And as to what the reasonable sort of, you know, the standards are applicable here, it's not necessarily the APA itself. The District Court also looked at the INA, because the INA, I mean, the Executive Removal Statute itself sets out specific classes who can be included, who must be included. And the question there is whether the existing procedures that they have in place and the way they've administered them can be extended to this new class of people in a fair and accurate manner. That's a different claim. That is a different claim. That's the arbitrary and sufficient claim. No, no, that would be on the E3. You've got to stay with this statute. That would be E3 otherwise unlawful. You're not making that claim. You're still trying to hook it under notice and comment, and I don't know what notice you're- what's the notice of proposed rulemaking? We want to see how everyone likes this, and then are we supposed to look at it when it's reviewable? Or can you challenge it because it doesn't satisfy a reasoned decision-making standard? I mean, I think it's possible to have a notice and comment requirement without providing for judicial review at the end, because the government- That's what we're trying to figure out. So you're saying they just have to go through- I think that could be one answer to the question. Well, I'm curious to know what you think the answer is. It makes no sense to me. Again, I can't get past 701 and 702, because I'm just looking at that as a cause of action. I don't know how you have any cause of action under the APA when you have a statute like this that says, sole and unreviewable discretion, and it may be modified at any time. Right, but- But nonetheless, you have to have notice and comment about that? Yes, Your Honor. I mean, I think that is- I mean, yes, that is our position, and I think- Well, I know. I'm trying to figure out how you justify it. I know it's your position. I'm sorry about that. And to be clear, I mean, there's- I think that there's two separate questions, and I think as to the first, as to whether we're barred under 701A or not, I think that is answered by the clear mandatory duty of the notice and comment requirements in 553B and C, which applies so long as the rule that is promulgated is a legislative rule. It's a mandatory requirement. That provides the law to apply. I think that as to the second question, which is specifically what sort of review we think- or how we read this statute, which is 1225, the sole and unreviewable discretion statute, I think it has to be read against Congress's intent in creating it, which is the following. When Congress created expedited removal in 1996, it was a massive change from 100 years of settled practice where everyone, no matter where they were in the country, no matter how long they had been here, had a full hearing on whether they were to be deported or not. They eliminated that, but they eliminated it only for people at the port of entry. They then authorized the agency to expand that further, but they required that the agency first go through the designation process. Congress could have written the statute differently. Congress could have just said, we are authorizing the use of expedited removal for anyone who can't show two years of continuous presence, and then allowed the agency to just modify that as they will, given their prosecutorial discretion, which the agency is allowed to do under other provisions of the INA. Congress didn't want to do it through individual case-by-case prosecutorial discretion, but instead wanted to start this and then said, here's as far as you can go with this rule. Under two years, and 100 miles, I have the right? All right. We're not certain there, but you can go there when, in your sole judgment, that is appropriate. I don't know. How else would Congress write that statute? How could you write something stronger than sole? And maybe modify it any time. I was trying to think if I've ever seen a statute in 40 years here that has so many places that make it clear you and other respectful plaintiffs can't get to it. Of course. Well, I think two answers to that. I mean, first, this Court already has doctrine on when the statute is clear enough to supersede the notice-in-common requirements, which are, you know, that's the standard that's set out in 5 U.S.C. 559 of the APA, which requires an express statement that notice-in-common requirements dotify, or the creation of an alternate procedure that it cannot be harmonized with the notice-in-common requirements. And I think in this case, the statute can be easily harmonized with the notice-in-common requirements. There's nothing in the statement of modified at any time that prevents the government from proceeding through notice-in-common so long as it's whatever it chooses to modify the scope of the statute. To what end? That's what we keep asking you, to what end? And you get edged on that because you're not telling the reason. No, but it's to the end of ensuring. Ensuring what? Ensuring that the agency acts with full and accurate information while it does so. And the reason for that is because otherwise you would have to allow for decision-making to be made without consultation of any relevant data. Could the agency say, the reason we're doing this, you're making us go through this, the reason is, proceeding from my sole, unreviewable discretion, which I can change tomorrow if I want to, is it looks like the numbers are slightly up and that bothers me and so I think the MET should be broader. That's it. Case closed. But so long as they consider it sort of debt whether they No, no, I'm telling you, it's really two sentences. The numbers are up and so I'm concerned and I think it will make sense to broaden the MET. That's it. Now, can you somehow get at that? At the conclusion of the Notice and Comments Proceedings? Yes. Yes, because I think it would go to the question of whether the Notice and Comments Proceedings had been followed in the first place. I think they gave notice and they said Lots of comments came in? Yeah, we proposed to do it and then the answer is, the numbers are up, we're concerned about it, and so the MET's going to be broader. Yes, I think at that point the government could do that. Could you challenge it? Could you challenge that? We could attempt to do so, but it's still wrong. Does your view of the statute mean that that I don't want to hear attempt. I assume you would only attempt it if you had a good faith view of the statute. So if you're a good faith view of the statute, that it would still allow you at that point to say that's not sufficient explanation, that's not reason, and you didn't consider ABC comments. We could raise a challenge that said that they didn't consider certain relevant factors, but so long as the material was in the record and the face of the regulations showed that they had considered the materials, we would likely move on that. I think that that would be the end result of notice and comment rulemaking, but to be clear, there's a presumption of regularity and a presumption that the government will act in good faith in response to information that's provided to it. And in this case, it's clear from the administrative record that If you were a congressman and you wanted to say, we don't want that for this. We want to let them make the judgment on the spot. We don't want public input. That takes too long. We don't want courts. That takes too long. Absence. Absence of illegality or constitutionality. How else would you write this? You would think that the procedures of 523 weren't applicable. That is, the APA is applicable. Well, that would prove the APA is applicable. That only applies if you're within the APA. No, I understand that, but that would make it absolutely clear. I mean, the other thing that they would do is things that are committed to agency discretion by law will not be judicially reviewable under the APA. They're not looking at cost of action. I understand that. How would you say, so you think they need to have said, and you are not subject to the APA? I think the other thing that they could have done, to go to the other point, would have also been to have been clear that discretion attaches not to the ultimate designation itself, but rather to the process of designating. And this goes back to the line of cases that goes back to McNary. Is there a process where issues are collateral, in the Supreme Court's word, to the decision itself? Here, you are wrapping up the process and the decision itself. This process is not collateral to the decision-making. It is the decision process. But the notice and comment requirement is entirely collateral. It doesn't, as McNary made clear... It's not entirely collateral because we require, as you said, it makes it not just your decision, but a public input. They have a role in the decision-making too. At a bare minimum, that's what it would have to say. That's a question as to what sort of process the decision-maker has to go through, but it doesn't dictate what the final decision is. The final decision, as was the case in McNary and CSS and Ms. Crosney, is still within the discretion of the agency. They can always say, we've looked at it, we've decided that our concerns outweigh these, and so we are disregarding the comments or find that they are outweighed and we're done. So your rule would just make notice and comment mean making some kind of formality. If in my sole and unrevealable discretion, the example that Judge Edwards gave, we went through a process, we're going to do what we wanted to do anyway. I mean, that suggests there's almost nothing to notice and comment at all. No, it doesn't because, again, the underlying purposes of notice and comment aren't to preserve judicial review alone. But there's also fact agency decision-making. Can they get more reasonable to have greater input for all of those things? But if you're saying at the end of the day, the agency can just do whatever it wants. Right, but this is a check on the agency from doing whatever it wants. It may not be the best check that would be possible, but it is a check that ensures at least some modicum of reasoned decision-making. Can you point to any statute or case that suggests that where there's notice and comment rulemaking, there's also not judicial review? I mean, can you point to any example? No, we haven't found any, Your Honor. But I do think that— I mean, that's been around a long time. Yes, but I also think that the way this statute is written is unique in the way that it cabins the discretion to the ultimate designation. Unique is fine. Unique is a very fine, fair accusation. It's a very stern statute. Right, but I do think that those are the reasons why the notice and comment procedure is not only implied but also serve a valuable purpose, even if there is no judicial review of the incident. I think we could perhaps just alter it around and think it serves a wonderful purpose and agency decisions are better made that way, but that's not our call. If Congress says, I'm outside that realm, they've decided what the best process for decision-making is, and we take that as given, that's in the Constitution. Right, I— It's a real challenge. No, I understand this, and I think the Court understands my position and our position, which is that the statute is not clear enough. First, that the statute does not cabin discretion over the entire process but only the ultimate designation. Are you— Second— Did I make a case— I'm sorry, you should talk. No, go ahead. I was— Yeah, and just second that there is no clear statement over writing notice and comment. So McNary, Bowen, other cases, I haven't seen any of them where they've made this process of decision separation where Congress used language in the statute that's so unreviewable. Are you aware of a case where they've done the process decision separation where they've used language like that? Well, that is— I mean, for example— We're not looking at that, McNary. For example, in the cases of the government sites in the 11th Circuit case board, that's precisely the distinction that the Court drew to find that the procedural attacks brought by the plaintiffs were cabin from judicial review. They specifically focused on the fact that the statute there— I'm sorry, maybe I should be clearer. Right, sorry. Where a court has held— I'm most interested, obviously, in the Supreme Court in this courtroom. I'll take another quarter of a second if you have it. Where the court has held that a procedural challenge can be brought even though the decision itself was in the sole and unreviewable discretion of the agency. I mean, other than McNary— McNary did not have sole and unreviewable discretion. That's wrong. Not on the sole. No case on the specific sole and unreviewable. Where you have language that's analogous to sole and unreviewable, or that frame itself, and the separation is made. No. No. We do not have a case for that. We don't have a case that affirmatively holds that that still allows for procedural attacks. What we do have is the converse, which is courts being very careful when the sole and unreviewable language is used to determine whether that is modifying the ultimate decision or the process slash verb that indicates the process of decision-making. And that's the 11th Circuit Case Board, which invokes that and says that, too. All right. Yes, the court has no further questions. Thank you. Thank you very much. All right. Mr. Stewart, I know you wanted to take three minutes, but we gave you about 30 minutes. I'm sure it will be 15 minutes from now. Very fair, Your Honor. I'll try to keep it under two minutes. Just to emphasize, I think the court's focus on sole and unreviewable discretion and may be modified at any time are critical and very important. Show just unreviewability, the cause of action problems, the inapplicability of notice and comment. I think, Judge Edwards, you mentioned Judge Collison's opinion in Bremer. I think the point made here was a good one, that when you have language like sole and unusual discretion and things like you have here, that means that the decision-maker gets to make the decision without anyone's advice and consent. Otherwise, it just doesn't mean a lot. I'd also just emphasize, finally, in terms of jurisdiction under 1252A2B, what's barred, the language of that provision is extremely broad in describing judgment regarding the granting of relief, any other decision or action when it's specified to be under discretion. Here, we have a very, very potent specification of discretion. But the discretion is discretion under the statute, right? So that means it can't be unconstitutional and it can't be in violation of the statute. And that's why you say it's got to be, when they talk about specified, under the subchapter. You have to read the withholding of discretionary review here sort of consistent with, you have to harmonize it, I think is an important word, with the granting jurisdiction under E3. And so it cannot be that the withdrawal of jurisdiction here takes away what E3A wanted to preserve, and that is arguments that it's unconstitutional, that it's exceeded the authority of the statute itself. That's just not the discretion that was conferred. The discretion that was conferred was to operate within the scope of Congress's assignment, which is very broad, sole and unreviewable, to go as far as the statute will let you go. And the point I'd emphasize there, Your Honor, is just the distinction I drew earlier between the designation and the written policies and guidelines implementing expedited removal. E3 speaks to and authorizes judicial review of the latter, but designation given sole and unreviewable may be modified at any time. The 1252A should be. That's where the bar is. But your condition isn't that what was granted in, and I'm getting these numbers wrong, in 1225, the sole and unreviewable discretion provision, what was granted there does not include unconstitutional decisions, does it? You're not, you're not, if I'm wrong, I didn't read you to be saying that the grant of sole and unreviewable discretion in 1225B1, whatever it is. You know where I am seeing this. Right, right. Yeah. 1225B1A, Roman at 3. They just come right off your tongue. Jeff, you probably do this all the time. Live with these a fair amount, Your Honor. That sole and unreviewable discretion there is not, does not include to act unconstitutionally. We're not claiming the authority to act unconstitutionally. What we're saying is, like, this is a context where constitutional protections are extremely diminished. So it's just, that's why it's properly unconstitutional. It's going to be hard to have a constitutional one. But if there is a constitutional one, it will only apply to, for standing it to the full statutory limit, but only for nonwhite people. Again, Your Honor. Is that unconstitutional? Or are you saying that's the thing? I think it would raise a separate question about my capability. No, it would delay the constitutional question. Your Honor, I think what I would emphasize is, what we have here is we don't have that situation. I take Your Honor's point. I know because I'm not asking about the situation. I'm just asking how the statute works together, and I'm responding to your argument about committed to discretion. I'm just saying I thought the Supreme Court told us to read these decisions to harmonize. And so if Congress has said, for obvious reasons, you can still bring a constitutional challenge, but it will have to pass Rule 11 as a constitutional claim, and it's harder here than in many other areas to do it. I think every time you overreach, we rear up. I think it would need to meet the requirements of 1252 EE-3 is how I'd respond. But they should be read together. I mean, I think they are certainly not divorced. Of course, we have the entire context of the statute. Thank you, Your Honor. Thank you very much. The case is submitted.
judges: Millett, Rao, Edwards